```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
    SHELDON HARRIS,
                                            1:19-cv-12084-NLH
                    Plaintiff,
                                            OPINION
    v.

    COMMISSIONER OF SOCIAL
    SECURITY,
                    Defendant.
```

**APPEARANCES:**

KATHRYNE POPE
RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
725 KENILWORTH AVE
CHERRY HILL, NJ 08002

    *On behalf of Plaintiff*

EVELYN ROSE MARIE PROTANO
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] and Supplemental Security Income

---

[1] DIB is a program under the Social Security Act to provide

("SSI")[2] under Title II and Title XVI of the Social Security Act.[3]  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, March 31, 2012.  For the reasons stated below, this Court will affirm that decision.

## I. BACKGROUND AND PROCEDURAL HISTORY

On September 25, 2014, Plaintiff, Sheldon Harris,

---

disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).  The Court will provide citations only to the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

2

protectively filed[4] an application for DIB and SSI alleging that he became disabled as of March 31, 2012.[5]  Plaintiff claims that he can no longer work at his previous job as a certified nursing assistant because he suffers from back, neck, and shoulder impairments.

After Plaintiff's initial claim was denied and upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on October 12, 2017.  On January 29, 2018, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on February 28, 2019, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

---

[4] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[5] Even though Plaintiff contends that his onset date of disability is March 31, 2012, the relevant period for Plaintiff's SSI claim begins with his September 25, 2014 application date, through the date of the ALJ's decision on January 29, 2018.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he or she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he or she satisfies the eligibility requirements, which cannot predate the date on which an application was filed).  This difference between eligibility for SSI and DIB is not material to the Court's analysis of Plaintiff's appeal.

3

**II. DISCUSSION**

    **A.    Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks

4

v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the

5

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience,

engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[6] for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not

---

[6] The regulations were amended for various provisions effective March 27, 2017.  See 82 F.R. 5844.  The parties do not argue that any of these amendments are relevant to Plaintiff's appeal.

7

>     disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.  This five-step process involves a shifting burden of proof.  See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

    **C.**    **Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairments of back, neck, and right shoulder impairments were severe.  At step three, the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of the

listed impairments.  At step four, the ALJ determined that Plaintiff's residual functional capacity ("RFC") rendered him able to perform medium exertional level work, which included his past job as a certified nursing assistant, and he was therefore not disabled.[7]

Plaintiff argues that the ALJ erred in three ways: (1) the ALJ failed to consider the narrative reports of two of Plaintiff's doctors, and the ALJ failed to properly weigh the opinion of a consultative examiner; (2) the ALJ erred in his assessment of Plaintiff's RFC; and (3) the ALJ erred at step three in not finding that Plaintiff's impairments met the Listings.

### 1. Whether the ALJ erred in the assessment of the medical providers and consultative examiner

Plaintiff contends that the decision of the ALJ must be reversed because the ALJ failed to consider the narrative reports prepared by a neurologist, Keith Preis, M.D., on November 29, 2007, and a chiropractor, Larry A. Sable, D.C., on April 6, 2008.  Dr. Preis evaluated Plaintiff once as a result

---

[7] Because the ALJ concluded that Plaintiff was capable of performing his past relevant work, the ALJ did not need to continue to step five of the sequential step analysis. Benjamin v. Commissioner of Social Security, 2019 WL 351897, at *4 n.9 (D.N.J. 2019) (citing Valenti v. Commissioner of Social Sec., 373 F. App'x 255, 258 n.1 (3d Cir. 2010); 20 C.F.R. § 404.1520(b)-(f)).

9

of a motor vehicle accident on June 5, 2007, and Dr. Preis concluded that Plaintiff's cervical and lumbar sprain/strain were a result of the accident.  (R. at 278-80.)  Plaintiff also received chiropractic treatment from Dr. Sable arising from the accident from June 13, 2007 until March 12, 2008, when Plaintiff was released from care because he met maximum improvement.  (R. at 284-89.)  Both doctors reviewed a July 17, 2007 MRI of Plaintiff's lumbar spine, which revealed an annular bulge at L2-3 and a diffuse annual bulge at L3-4.

The ALJ did not specifically mention these reports in his decision.  Plaintiff argues that this is reversible error because even though the reports pre-date the alleged onset date of March 31, 2012, they are consistent with the remainder of the evidence showing significant functional limitations.

The Court does not agree.  The burden is on the claimant to show that he was disabled - and unable to perform work at the substantial gainful level - on the alleged onset date of disability.  The burden is also on the claimant to show that his medically determinable impairments had lasted for a continuous period of no less than 12 months before that date, or will be expected to last for at least that duration after then.  Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citations omitted).  To meet that burden, the claimant may present evidence outside the disability period, and the ALJ may consider such evidence,

10

but that evidence must be both relevant and probative to whether the claimant was disabled as of the alleged onset date. Townsend v. Commissioner, 553 F. App'x 166, 168 n.2 (3d Cir. 2014); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 203 (3d Cir. 2008) (quoting Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)) (quoting Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)) (explaining that an ALJ errs if he does not consider all the pertinent and significant probative evidence before him, but the ALJ does not need to consider evidence that is not).

Here, Plaintiff argues that the ALJ erred when he failed to mention, and therefore presumably failed to consider, the reports of Dr. Preis and Dr. Sable, and those reports support his claim of disability as of March 31, 2012. The reports, however, were prepared in November 2007 and April 2008 - four years prior to his alleged onset date - and the record shows that Plaintiff worked as a certified nursing assistant through at least 2010 (according to Plaintiff's testimony) and had earnings at the substantial gainful levels through 2011. Clearly, Plaintiff's ability to work for several years following the accident shows that the reports of these two doctors could not have supported a claim of disability during the time in 2007-2008, let alone as of March 31, 2012.

The lack of relevance and pertinence of the reports of Dr.

11

Preis and Dr. Sable to Plaintiff's disability claim is further illustrated by the February 12, 2015 report of an orthopedic consultative examination with William P. Anthony, M.D. The ALJ summarized Dr. Anthony's findings:

> February 2015 evaluation with consultative examiner Dr. [Williams P. Anthony][8] shows the claimant alleged neck pain, lower back pain and some weakness with right wrist extension, as well as right shoulder pain. The claimant reported no actual radiating complaints in the right upper extremity or left upper extremity. The doctor noted some exaggerated pain behaviors with range of motion testing, with the claimant reacting to even the lightest touch with exaggerated complaints for the paraspinal, cervical and lumbar areas. Cervical range of motion was limited and the doctor noted right cervical paraspinal tenderness out of proportion to any pressure applied. There was no tenderness in the thoracic spine and exaggerated response to light touch in the lumbar spine with only mild increased tone. Straight leg raise was negative. Passive range of motion in the hips caused him to complain of pain, but on subsequent trials, no back pain was reported. Range of motion of the back was also exaggerated and inconsistent. The doctor noted right shoulder pain with positive crossed adduction and impingement signs. There was pain in shoulder abduction and rotations. He resisted passive range of motion on the right shoulder. Range of motion was slightly limited. The doctor indicated that given the guarding at the right shoulder, it was difficult to assess strength other than to note that it was at least 4/5 over the available range. He noted some limitation with elbow reflexes with variable effort. There were no limits with wrist flexion and extension was at least 4+/5 with repeated attempts. Initially, there was very limited effort. Strength was reported as 5/5 on the left and 4/5 on the right, which would suggest he no longer had any functional wrist drop and it was unclear why he was using the splint. Left sided strength was entirely normal throughout the upper extremity. Range of motion for the hips, knees, ankles and feet was normal. Strength for the hips, knees, ankles and

---

[8] The ALJ inadvertently refers to Dr. William Anthony as "Dr. Anthony Williams."  (Compare R. at 324, the report of Dr. William Anthony, with R. at 21-22, the ALJ decision.)

    feet were normal.

(R. at 21-22).

    After relating Dr. Anthony's examination findings, and considering other medical records along with Plaintiff's testimony, the ALJ found that "[a]lthough the claimant does have a history of back, shoulder, neck and wrist pain, imaging shows significant changes, but they have not progressed. . . . Consultative examiner Dr. [Anthony] noted exaggerated pain behaviors and reported that the claimant was not putting forward his best effort.  He also questioned the claimant's need for a splint. . . .  His limitations are not fully supported by the medical evidence."  (R. at 22-23.)

    Thus, when the ALJ considered evidence during the time period when Plaintiff claimed he was disabled, it showed that Plaintiff's condition had not progressed since March 31, 2012. (See R. at 22, detailing medical evidence from 2012 through 2015.)  Plaintiff points to nothing in the reports of Dr. Preis or Dr. Sable that supports Plaintiff's contention that he was disabled as of March 31, 2012 and continued to be disabled as of the date of the ALJ's decision on January 29, 2018.  Those November 2007 and April 2008 reports, therefore, are not relevant or probative, and the ALJ did not err in not

13

considering them.[9]

With regard to Plaintiff's argument that the ALJ erred because he did not state what weight he afforded Dr. Anthony's report, that argument is also without merit. As pointed out by Defendant, an ALJ is required to state what weight he ascribes to a medical opinion, but not to other forms of medical evidence. 20 C.F.R. §§ 404.1527(c), 416.927(c) (providing that the Commissioner weighs "medical opinions"). Dr. Anthony only provided his examination findings, and did not provide "medical opinions," which are defined by the regulations as statements that "reflect judgments about the nature and

---

[9] It is also important to note that the ALJ's lack of specific reference to the reports of Dr. Preis and Dr. Sable does not necessarily mean that he did not review and consider them, particularly because they were not probative or relevant. See Moraes v. Commissioner Social Sec., 645 F. App'x 182, 187 (3d Cir. 2016) (explaining that "although the ALJ's decision does not expressly cite the portion of Dr. Wong's report that discusses her findings as to Moraes's medical condition, there is no indication in the decision that the ALJ wholly rejected those findings; indeed, they are consistent with the ALJ's determination at step two that Moraes suffered from the severe impairments of sequelae of his work injury and an adjustment disorder. Dr. Wong's findings appear to have little, if any, additional probative value when considered alongside the medical findings of Dr. Fulford, Dr. Ahmad, and Dr. Fernando specifically cited by the ALJ. For these reasons, the ALJ was not required to expressly mention those findings. In the absence of any indication to the contrary in the record, we cannot conclude that the ALJ improperly disregarded relevant evidence.") (citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008) (noting there is "no authority for the proposition that an ALJ must cite all evidence a claimant presents"); Fargnoli, 247 F.3d at 42 ("[W]e do not expect the ALJ to make reference to every relevant treatment note....")).

14

severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his] impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Consequently, the ALJ did not err by not providing any "weight" to Dr. Anthony's report.

### 2. Whether the ALJ erred in his RFC determination

Plaintiff argues that the ALJ erred in finding that Plaintiff retained the RFC to perform medium exertional level work, which included Plaintiff's past relevant work as a certified nursing assistant.[10] Plaintiff cites to the evidence that the ALJ considered, and argues that the ALJ should have considered it differently - i.e., to show that Plaintiff was not capable of performing work at the medium exertional level. Plaintiff, however, fails to point to evidence that specifically contradicts the record evidence cited by the ALJ.

The Court finds that Plaintiff's arguments amount to a mere disagreement with the ALJ's findings rather than how substantial evidence did not support the RFC determination. See, e.g., Perkins v. Barnhart, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by

---

[10] The RFC reflects "what [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a).

15

substantial evidence."); Moody v. Commissioner of Social Security Administration, 2016 WL 7424117, at *8 (D.N.J. 2016) ("[M]ere disagreement with the weight the ALJ placed on the opinion is not enough for remand."); Grille v. Colvin, 2016 WL 6246775, at *8 (D.N.J. 2016) ("Distilled to its essence, Plaintiff's argument here amounts to nothing more than a mere disagreement with the ALJ's ultimate decision, which is insufficient to overturn that decision.").

Because the ALJ properly supported his RFC determination, the Court does not find that the ALJ erred on this issue. See Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019) (reiterating that the threshold for such evidentiary sufficiency under the substantial evidence standard is not high, and it "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (citations omitted)).

**3. Whether the ALJ erred at step three**

Finally, Plaintiff argues that the ALJ erred at step three by finding that his impairments did not meet Listing 1.04 - disorders of the spine.

As a general principle, an ALJ is required to set forth the reasons for his decision, and a bare conclusory statement that an impairment does not match, or is not equivalent to, a listed impairment is insufficient. Burnett v. Commissioner of Social

16

Security Administration, 220 F.3d 112, 119-20 (3d Cir. 2000). An ALJ is not required, however, "to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 504-05 (3d Cir. 2004). An ALJ's step three analysis is proper when the "decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that" a claimant does not meet the requirements for any listing. Id.

> To meet Listing 1.04, Plaintiff must have:
>
> > A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> >
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> >
> > or
> >
> > B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> >
> > or

17

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

In order for an impairment to match a listing, a claimant must show that the impairment meets "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" Jones, 364 F.3d at 504 (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original)). The quoted Zebley decision further explains:

> "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.' The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work."

Zebley, 493 U.S. at 532 (citations omitted).

The burden is on Plaintiff to demonstrate that his impairments meet the listings. Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005) (explaining that in "the first four steps the burden is on the claimant"); id. ("If the claimant

18

satisfies step 3, she is considered per se disabled.").

The main evidence Plaintiff cites to support his contention that he meets any of the criteria for Listing 1.04 during the relevant time period, which is as of March 31, 2012, are the reports of Dr. Preis and Dr. Sable.  As noted above, those reports were prepared four years prior to Plaintiff's alleged disability onset date and they do not reflect Plaintiff's condition as of March 31, 2012.  Additionally, Plaintiff fails to provide evidence to match all the necessary elements of Listing 1.04.

Plaintiff's argument is also without merit because of this Court's finding that the ALJ's RFC determination was proper.  Logic dictates that where it has been found at the statutory standard level of severity that a claimant retains the RFC to perform his past relevant work, it cannot be found that the claimant's impairment meets a higher level of severity which affords the claimant the presumption of disability.  The ALJ did not err at step three.

### III. Conclusion

This Court may not second guess the ALJ's conclusions, but may only determine whether substantial evidence supports the ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  The Court finds that the ALJ's

19

determination that Plaintiff was not totally disabled as of March 31, 2012 is supported by substantial evidence.  The decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date:  May 7, 2020                     s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.